IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOHN E HARTLEY,

       Petitioner,

v.                                    CASE NO. 1:18-cv-5-AW-GRJ

SECRETARY, FLORIDA DEP'T
OF CORRECTIONS,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Petitioner's Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1 ("Petition").  The

Petition stems from Petitioner's Alachua County conviction for second

degree murder, for which he is serving a life sentence.  *Id.*  Respondent

has filed a response and appendix with relevant portions of the state-court

record, and Petitioner has filed a reply.  ECF Nos. 29, 34.   Upon due

consideration of the Petition, the response, the reply, and the state-court

record, the undersigned recommends that the Petition be denied.[1]

## I. State-Court Proceedings

On November 20, 2006, Petitioner was charged with the first-degree

---

[1] The Court has determined that an evidentiary hearing is not warranted because the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

murder of Elgin Spencer Whittenburg.[2]  Petitioner asserted self-defense

and testified in his own behalf at trial.  ECF No. 29-4 at 67-134.  A jury

found Petitioner guilty of second-degree murder, and he was sentenced to

life in prison.  ECF No. 29-1 at 158; ECF No. 29-6 at 95-116.  Petitioner's

conviction was affirmed on direct appeal.  ECF No. 29-7 at 44.

Petitioner sought collateral relief by way of a petition alleging

ineffective assistance of appellate counsel.  The petition was granted

because appellate counsel did not appeal the trial court's use of the

standard jury instruction on manslaughter.  The instruction used by the

court was invalidated by the First DCA in another case shortly before

counsel filed the initial brief in Petitioner's appeal.  ECF No. 29-7 at 98-99.[3]

Petitioner's case was remanded for a new trial, which commenced on

February 10, 2014.  ECF No. 29-17 at 124.

A redacted version of Petitioner's recorded testimony from his first

trial was introduced at the second trial.  Prior to trial, a hearing was held to

determine what redactions were necessary to remove references to

Petitioner's first trial and other matters.  ECF No. 29-17 at 41-123.

The evidence adduced at Petitioner's second trial may be

---

[2] Petitioner was also charged and convicted for grand theft of a motor vehicle and petit theft, but those convictions are not at issue in this case.

[3] The Florida Supreme Court subsequently affirmed the decision invalidating the manslaughter instruction.  *Montgomery v. State,* 39 So.3d 252 (Fla. 2010)

summarized as follows.  The victim, known as "Spence", was employed at a day-labor company called "Labor Ready".  A few weeks before his death, Spence approached Petitioner to work with him.  Spence lived in his mother's trailer in Windsor, and provided transportation to Petitioner and other workers, driving a pickup truck belonging to his father.  Spence's mother, Burtha Wittenburg, testified that on Monday, September 11, 2006, she traveled to Lakeland, Florida, leaving Spence at home.[4]  She returned three days later at 6:00 p.m. and found Spence's body on a ramp outside the front door.  The black Dodge Dakota that Spence drove was missing. Mrs. Whittenburg identified items of jewelry that had been removed from her room as well as a set of hair clippers that were missing. She testified that Spence kept fishing knives in a kitchen drawer.  ECF No. 29-17 at 267-97.

An autopsy revealed that the cause of Spence's death was a stab wound to the neck with a fishing knife.  ECF No. 29-18 at 65.  Police officers found bloody clothes in Whittenburg's bathroom, her dresser drawers had been rifled, and her jewelry boxes had been opened.  The State presented evidence from a DNA analyst that no DNA other than Spence's own DNA was found in his fingernail scrapings.  *Id.* at 119.  A leg

---

[4] Mrs. Whittenburg's testimony was presented by way of a videotape from Petitioner's first trial.

swab of suspected blood on Petitioner's leg contained Spence's DNA.  *Id.*

at 127.  Other State witnesses testified that Petitioner did not have any

apparent injuries following his altercation with Spence.  ECF No. 29-18 at

108 (Officer Anthony Gerard); 135 (Officer David Lepianka); 157

(Petitioner's mother); 175 (Detective Filer).  The State's blood-spatter

expert testified that Spence was at the open doorway of the trailer when his

carotid artery was severed on the right side of his neck, and it appeared

that Petitioner was either on Spence's left side or behind him when Spence

was stabbed because there was no arterial spurting on Petitioner's

clothing.  *Id.* at 216-17.

Petitioner's mother testified that he came to her house on September

14 in a dark pickup truck and gave her a gold-colored necklace, which she

subsequently gave to police.  *Id.* at 154-56.  Petitioner was stopped  that

night while driving the stolen Dodge Dakota.  Pieces of Whittenburg's

jewelry were found in the truck's glove compartment.  *Id.*  at 103-06; 130-

32; 179.  During the traffic stop, while officers were determining that the

truck was stolen, Petitioner became belligerent and stated "[y]ou all act like

I done killed somebody or something."  He stated that the owner had given

him permission to drive the truck.  *Id.* at 161-65.

Prior to his testimony in the first trial, the trial court conducted a

colloquy with Petitioner to confirm that he consulted with counsel regarding

the pros and cons of testifying.  Petitioner affirmed that he had ample
opportunity to discuss his testimony with counsel.  Petitioner testified that
he understood his prior felony convictions and misdemeanor convictions for
dishonesty would be revealed to the jury.  Petitioner confirmed that his
decision to testify was made of his own free will.  The court further
admonished him that the fact that he took the stand could not be used
against his attorneys as an ineffective-assistance claim.  ECF No. 29-4 at
60.

The state presented Petitioner's prior trial testimony in its case-in-
chief at the second trial.  Petitioner testified that in the days prior to the
killing, Petitioner, Spence, and two other men worked together as day
laborers through Labor Ready at a Wal-Mart distribution center.  Spence
drove the men to the job site in his truck.  On Wednesday September 11,
Spence had an accident with a forklift and was removed from the job site
for a drug test.  When he returned, the men decided to end the workday.
They stopped to buy beer on the way back to Labor Ready, where they
collected their paychecks.  They cashed their checks and then Spence and
Petitioner dropped the other two men off.  Spence and Petitioner bought
crack cocaine together and went to Spence's mother's trailer, where
Spence lived.  Petitioner had been staying at the trailer rather than his
motel while Spence's mother was out of town.  He testified that earlier in

the week Spence brought some jewelry to Petitioner and they traded it for crack cocaine.  ECF No. 29-18 at 236-55.

Petitioner testified that he and Spence smoked crack and drank beer. They discussed the fact that Spence would probably lose his job due to the drug test.  Petitioner said that Spence allowed him to take the truck to visit a friend, and Petitioner returned to the house around 7:30 p.m.  When he returned, Spence was sitting in the yard.  Petitioner did some laundry. Spence had a phone conversation with his mother, and then asked Petitioner if he had any money left to buy crack.  Petitioner had $17, but he refused to give it to Spence.  Spence threatened to tell their employer that Petitioner used drugs.  Petitioner asked for a ride back to his motel, but Spence refused and blocked Petitioner's way when he tried to leave. Petitioner testified that Spence had Petitioner pushed back against the trailer door with a strong choke-hold around Petitioner's neck.  Petitioner testified that he saw a knife, grabbed it, and stabbed Spence twice in the neck.  Petitioner then pushed Spence away from him and ran past him into the back bathroom of the trailer.  Petitioner returned to the living room and found Spence lying in front of the door.  Petitioner used a white shirt to wipe blood off of his hands and face, then returned to the bathroom to shower and change into some of Spence's clean clothes.  *Id.*  at 256-63.

Petitioner then drove around, stopping to buy liquor.  He encountered

someone he knew and tried to sell him a set of hair clippers for cash or

crack cocaine.  He passed out for a while, then awoke the next morning

and drove to a gas station, where an acquaintance gave him money for gas

and beer.  At one point, Petitioner drove to his mother's house and gave

her a necklace that he said was in a jewelry box in the truck. He continued

to ride around in the truck, asking acquaintances and family members for

money and trying to sell the clippers, until he was stopped for a traffic

violation Thursday night and arrested.  *Id.* at 263-72.

Petitioner testified that Spence had pushed him on a previous

occasion when they had an argument.  He knew that Spence had an

armed-robbery conviction.  He maintained that he was facing Spence when

he stabbed him, that Spence was choking him, that he was "fixing to die"

and was placed in imminent fear for his life.  *Id.* at 276-80.

After Petitioner's prior video testimony was played, defense counsel

raised the issue that a reference to the "jury" was inadvertently left in the

redacted testimony, in a question where defense counsel had asked

Petitioner to describe his work for Labor Ready and "give the jury an idea of

what that work comprised of and what you did."  *Id.* at 310-11.  The trial

court overruled the objection, noting that the inadvertent "jury" reference

amounted to one word or sentence in about 80 pages of testimony.  *Id.* at

313-16.

Gary Roose testified that he worked as a day laborer with Petitioner and Spence during the week of September 11, 2006.  Spence used the Dodge Dakota to drive the men to and from the job site.  Spence had an accident with a forklift on Wednesday of that week and had to take a drug test, causing the men to lose two hours of work.  According to Roose, Petitioner said that he wanted to kill Spence for causing him to lose pay. Roose told a Labor Ready manager that she was going to have problems with Spence and Petitioner because they were arguing and fighting.  He also told an investigator that Petitioner was "really pissed" at Spence.  *Id.* at 317-37.

Defense counsel called a Labor Ready manager, Roger Neugent, who testified that Petitioner could have returned to work and did not necessarily have to leave with Spence.  ECF No. 29-9 at 11-12.  Officer Denise Scott testified that she did not recall Roose saying that Petitioner was angry at Spence, and she would have put that in her report of Roose's interview.  *Id.* 13-15.

Petitioner's blood-spatter expert, Janice Johnson, testified that in her opinion Petitioner's description of the attack, in which Petitioner was in front of Spence and stabbed him in the neck with his left hand, was consistent with her analysis of the forensic evidence.  *Id.* at 61.  She conceded on

cross-examination that Petitioner could have been standing behind or to the side of Spence when he stabbed him, giving that scenario a 50-50 chance of being correct.  She also conceded that Petitioner is right-handed and his left hand was his "off hand".  She had spoken with Petitioner on numerous occasions prior to reaching her conclusions.  *Id.* at 62-71.

Petitioner testified again in his own behalf at the second trial, essentially reiterating his description of the killing in support of his self-defense claim.  ECF No. 29-19 at 94-160.

The court's jury instructions included the Florida Supreme Court's standard instruction on justifiable use of deadly force.  *Id.* at 191-93. The jury found Petitioner guilty of second-degree murder, and he was sentenced to life in prison.  ECF No. 29-20 at 33; ECF No. 29-26 at 21. The First DCA affirmed *per curiam*, without a written opinion.  Petitioner pursued postconviction relief by way of a petition alleging ineffective assistance of appellate counsel and Fla. R. Crim. P. Rule 3.850 motions alleging ineffective assistance of trial counsel, all of which were denied in initial review and appeal.  ECF No. 29-26 at 62; ECF No. 29-27 at 166; ECF No. 29-28 at 84; ECF No. 29-29 at 24, 45.

Petitioner then filed the instant federal habeas corpus petition which Respondent concedes is timely and exhausted.  Petitioner asserts four claims of ineffective assistance of counsel: (1) Appellate counsel was

ineffective for failing to argue on appeal that the jury was "tainted" by the reference to "jury" in his videotaped trial testimony; (2) Trial counsel at his first trial did not inform him that his testimony could be used against him at a subsequent trial; (3) Trial counsel failed to object to improper impeachment of the defense forensic expert; and (4) Trial counsel failed to object to the jury instruction on justifiable use of deadly force.  ECF No. 1.

## II. <u>Section 2254 Standard of Review</u>

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow,* 571 U.S. 12*,* 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 571 U.S. at 18-19 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*.

This highly deferential standard carries special force in habeas cases asserting ineffective-assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[5] —a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

---

[5] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

In view of the deference afforded to the state courts' adjudication of

constitutional claims, "AEDPA erects a formidable barrier to federal habeas

relief for prisoners whose claims have been adjudicated in state court.

AEDPA requires 'a state prisoner [to] show that the state court's ruling on

the claim being presented in federal court was so lacking in justification that

there was an error . . . beyond any possibility for fairminded disagreement.'"

*Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  "'If this

standard is difficult to meet'—and it is---'that is because it was meant to

be.'" *Id*. at 16 (quoting *Harrington*, 562 U.S. at 102).  "We will not lightly

conclude that a State's criminal justice system has experienced the

'extreme malfunction' for which federal habeas relief is the remedy."  *Id*.

(quoting *Harrington*, 562 U.S. at 102).

## III. <u>Discussion</u>

### *Ground One: Ineffective Assistance of Appellate Counsel*

Petitioner contends that his appellate counsel was ineffective for

failing to argue on appeal that the jury was "tainted" by a question in the

videotaped testimony from his first trial in which defense counsel asked him

to "give the jury an idea of what that work comprised of,"  in reference to

Petitioner's work as a day laborer at the Wal-Mart distribution center.   ECF

No. 1 at 15.  Petitioner contends that the redactions to his testimony were

intended to prevent the jury from knowing about the first trial, and the error

rendered the redaction effort "for naught".  The First DCA denied his

petition alleging ineffective assistance of appellate counsel "on the merits"

without a written opinion.  ECF No. 29-26 at 62.

Absent evidence to the contrary, this Court may presume that the

First DCA adopted the rationale of the trial court in overruling counsel's

objection to the missed redaction. *Wilson v. Sellers,* 138 S. Ct. 1188, 1192

(2018) (federal court on habeas review "should 'look through' the

unexplained decision to the last related state-court decision that does

provide a relevant rationale. It should then presume that the unexplained

decision adopted the same reasoning.").  The record reflects that the

parties' endeavored to redact any reference to the prior trial, and agreed on

the redacted version that was shown to Petitioner's jury.  ECF No. 29-11.

The jury was given a transcript while the video played, but were not

permitted to take the transcript to the jury room.  The trial court observed

that the reference amounted to one word or sentence in about 80 pages of

redacted testimony, and did not find that it established a reason to exclude

the testimony.  ECF No. 19-18 at 310-16.

To prevail on a claim that appellate counsel was ineffective, Petitioner

must first show that appellate counsel was objectively unreasonable in not

raising an omitted issue. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000).

The exercise of judgment involved in framing an appeal makes it "difficult to

demonstrate that [appellate] counsel was incompetent" under *Strickland* for

omitting a particular argument. *Smith*, 528 U.S. at 285–86 (citing *Gray v.*

*Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored

issues are clearly stronger than those presented, will the presumption of

effective assistance of counsel be overcome") ). In assessing appellate

counsel's performance, "the Sixth Amendment does not require appellate

advocates to raise every non-frivolous issue." *Heath v. Jones*, 941F.2d

1126, 1130 (11th Cir. 1991). Rather, "effective advocates 'winnow out'

weaker arguments even though the weaker arguments may be

meritorious." *Id.* at 1131. When appellate counsel reviews the entire record,

thinks about various claims, and then chooses to pursue only certain issues

on appeal, counsel has not rendered ineffective assistance. *Id.* Although a

non-appealed issue might have been successful if it had been raised,

appellate advocacy must be "judged in its entirety." *Id.*

To determine prejudice in the context of appellate counsel's

effectiveness, the Court must review the merits of the neglected claim or

claims. *Heath*, 941 F.2d at 1132. Failure to raise a claim will not be found

prejudicial unless the claim would have a reasonable probability of success

on appeal. *Id.*  Prejudice is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694.  It is not enough for the petitioner to

show that the error had some conceivable effect on the outcome; he must

show that the result would have been different. *Id*. at 693.

In this case, the trial court plainly found that the lone reference to

"jury" by defense counsel in Petitioner's redacted testimony was not

sufficiently prejudicial to merit any curative action by the court.  The missed

redaction was clearly inadvertent and isolated.  Any suggestion that the

erroneous redaction had any effect on the jury is speculative at best.

Petitioner's appellate counsel chose to focus on the trial court's jury

instructions on justifiable use of force and its denial of a special instruction

explaining the burden of proof on the affirmative defense of self-defense.

ECF No. 29-25.  The redaction issue identified by Petitioner, even if non-

frivolous, is not clearly stronger than the issues briefed on appeal.  *See*

*Heath*, 941 F.2d at 1131.  On this record, Petitioner has failed to

demonstrate either deficient performance by appellate counsel or prejudice.

Accordingly, the undersigned concludes that Petitioner has failed to show

that the state court's rejection of this ineffective-assistance claim was "so

lacking in justification that there was an error . . . beyond any possibility for

fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### Ground 2: Ineffective Assistance Regarding Prior Testimony

Petitioner contends that he was denied the effective assistance of

counsel when counsel at his first trial failed to inform him that if he testified

at trial his testimony could be used by the prosecution at a second or subsequent trial.  He claims that if he had known of that possibility, he would not have testified at the first trial.  ECF No. 1 at 16.

The state court denied relief on this claim on postconviction review. ECF No. 29-27 at 168-70.  The court observed that there was no evidence that Petitioner's testimony at his first trial was involuntary or that its admission would mislead the jury or confuse the issues.  The court further observed that had Petitioner not testified at his first trial, his counsel would have been unable to establish a defense of self-defense.  There were no other witnesses to the crime.  *Id.*

In *Harrison v. United States,* 392 U.S. 219 (1968), the United States Supreme Court addressed the issue whether a defendant's testimony at a previous trial was admissible at a subsequent retrial for the same offense. In *Harrison,* the defendant testified at his first trial after the State had introduced three confessions he had made while he was in police custody. On appeal, Harrison's conviction was reversed. The Court of Appeals found that the confessions were illegally obtained. At Harrison's retrial, his prior testimony was read into evidence. The appeals court affirmed, and the United States Supreme Court granted "certiorari to decide whether the petitioner's trial testimony was the inadmissible fruit of the illegally procured confessions." 392 U.S. at 221 (footnote omitted). The Supreme Court held

that Harrison's testimony should not have been admitted at his retrial. The Court stated that the State failed to demonstrate that "the petitioner's testimony was obtained 'by means sufficiently distinguishable from the underlying illegality to be purged of the primary taint.'" *Id.* at 226 (internal citation omitted).

Here, as summarized above, the trial court conducted a colloquy with Petitioner at his first trial and determined that his decision to testify was made freely and voluntarily after discussing the pros and cons with his trial counsel.  ECF No. 29-4 at 59-60.  Moreover, the state court on postconviction review reasonably concluded that Petitioner would have testified even if he had known his testimony could be used in a subsequent case because he had no other means of establishing self-defense, and therefore he failed to demonstrate prejudice.

Petitioner's reliance on *Rolon v. State,* 72 So.3d 238 (Fla. 2nd DCA 2011), is misplaced.  In that case, the Florida appeals court reversed a second-degree murder conviction in which the defendant's testimony from a prior trial was admitted at his second trial.  The trial court in Rolon's first trial *sua sponte* found that defense counsel was ineffective as a matter of law because counsel did not properly prepare his client to testify and Rolon made unsolicited prejudicial statements.  The trial court granted Rolon a new trial.  However, the trial court subsequently permitted the State to use

Rolon's previous testimony in his second trial.  The appeals court affirmed

the general rule articulated in *Harrison* that former trial testimony is

admissible in later proceedings if it is voluntary and introduction will not

mislead the jury or confuse the issues.  *Rolon,* 72 So. 3d at 243.  The court

held that although use of Rolon's testimony did not violate the Fifth

Amendment because it was voluntary, it did violate the Sixth Amendment

because it was the product of ineffective assistance.  Acknowledging the

"unique circumstances" of the case, the appeals court held that Rolon was

entitled to a new trial at which the State would not be permitted to use the

"tainted" testimony from his first trial.  *Rolon,* 72 So. 3d at 244-45.

No such "unique circumstances" are presented in this case.

Petitioner's first trial testimony was not found to be the product of

ineffective assistance and it was found to be freely and voluntarily made.

Therefore, on this record, Petitioner has failed to show that the state court's

rejection of this ineffective-assistance claim was "so lacking in justification

that there was an error . . . beyond any possibility for fairminded

disagreement.'" *Burt,* 134 U.S. at 15.

### Ground 3:  Failure to Object to Impeachment of Defense Expert

Petitioner contends that his trial counsel was ineffective for failing to

object to the State's impeachment of his expert, Janice Johnson.  ECF No.

1 at 17-18.  Petitioner argues that during Johnson's deposition, the State

learned that Johnson had several phone conversations with Petitioner while

he was in jail.  He alleges that the State moved for *in camera* inspection of

the recordings of the conversations, but there was no ruling on the motion.

Petitioner claims that during the State's cross-examination of Johnson the

prosecutor asked about the conversations and "implied to the jury" that the

calls established a personal relationship with Petitioner, thereby

undermining her credibility as an expert.  Petitioner argues that counsel

should have objected to the use of "privileged phone conversations."  *Id.*

The state court rejected this claim on postconviction review because

the record reflected that the conversations did not involve work product or

trial strategy.  ECF No. 29-27 at 170.  At her deposition, Johnson testified

that she met personally with Petitioner on at least three occasions and had

several phone calls.  She testified that no trial strategies were discussed.

*See* ECF No. 29-7 at 130-33.  On cross-examination at trial, the State

referenced the calls to attempt to establish that Johnson's casual, personal

interaction with Petitioner created a bias in her evaluation of the forensic

evidence.  However, Johnson denied that she built up a "camaraderie" with

Petitioner.  She told Petitioner she would take his calls and that she didn't

want to see the trial go the "wrong" way.  *See* ECF No. 29-19 at 64-72.

The state court on postconviction review observed that it would have

permitted the State to listen to the calls since there was no indication they

involved privileged communication.  The court then held that regardless, Petitioner failed to show either error by counsel in not objecting or prejudice, based on the fact that the statements made by Petitioner to Johnson were used by Johnson in forming her expert opinion and the statements were introduced at trial by the defense.  ECF No. 29-27 at 170-71.

It is clear from the state court's decision and the record that any objection to the State's cross-examination of Johnson regarding her contacts with Petitioner would have been unsuccessful.  Counsel cannot be deemed to have performed deficiently because he did not make objections that have little likelihood of success.  Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### Ground Four:  Failure to Object to Jury Instruction

Petitioner asserts that he was denied effective assistance of counsel because his trial counsel failed to object to the court's jury instruction on the justifiable use of deadly force.  ECF No. 1 at 18-19.  Petitioner contends that the instruction was improper, misleading, and/or confusing because it left the jury with no choice but to convict him because he was under the influence of drugs at the time and therefore could not be found to have no

duty to retreat from the altercation. *Id.*

The trial court delivered the Florida Supreme Court's standard jury instruction on the justifiable use of deadly force, which included the following language:

> If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible [sic] felony.

ECF No. 29-12 at 107; *see* Florida Standard Jury Instruction (Criminal) 3.6(f). This instruction has been upheld by the Florida Supreme Court. *State v. Floyd,* 186 So. 3d 1013, 1020-21 (Fla. 2016) ("We conclude that Standard Jury Instruction (Criminal) 3.6(f) accurately and correctly explains this law to the jury with regard to the factually complex situations where the jury must unwind the facts to determine who was the initial aggressor. Indeed, *every other district court* to address this question prior to our review, as well as a different panel of the First District, has reached the same conclusion. . . . The instructions are not confusing, misleading, or contradictory with regard to the duty to retreat where there is a question of fact as to who was the initial aggressor.") (internal citation omitted).

Counsel cannot be deemed deficient for failing to object to standard jury instructions that have not been invalidated by the Florida Supreme

Court. *Rodriguez v. State*, 919 So. 2d 1252, 1272 (Fla. 2005); *Elledge v.

State*, 911 So. 2d 57, 77 (Fla. 2005); *Rosado–Rodriguez* v. Sec'y, Dep't of

Corr., No. 8:15–CV–1260–T–33AEP, 2016 WL 1305152, at *14 (M.D. Fla.

Apr. 4, 2016) (unpublished) ("Failure to object to a standard jury instruction

is not ineffective assistance of counsel.").  This was the reason the state

postconviction court rejected Petitioner's claim.  ECF No. 29-27 at 171-72.

Petitioner has failed to show that the state court's rejection of this claim

was "so lacking in justification that there was an error . . . beyond any

possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

## IV.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue

or deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C. §

2253(c)(2)." A timely notice of appeal must still be filed, even if the court

issues a certificate of appealability. Rule 11(b), Rules Governing Section

2254 Cases.

The undersigned finds no substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000). Therefore, the undersigned recommends that the

district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. <u>Conclusion</u>

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for Writ of Habeas Corpus, ECF No. 1, should be **DENIED**, and that a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 22nd day of February 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**